IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**PAUL JASON SHANNON, M.D.**                                                              **PLAINTIFF**

v.                                                                    CAUSE NO. 1:12CV105-LG-RHW

**MISSISSIPPI COAST UROLOGY, PLLC;**
**MARK S. LYELL, individually and as sole**
**member of Mississippi Coast Urology, PLLC;**
**SMS MANAGEMENT, LLC, individually**
**and as agent for Mississippi Coast Urology,**
**PLLC; DONALD S. DAVENPORT; and**
**JOHN AND JANE DOES D, E, F, G, H, and I**                              **DEFENDANTS**

### MEMORANDUM OPINION AND ORDER DENYING
### DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

**BEFORE THE COURT** are the Motion for Summary Judgment [92] filed by Mark S. Lyell and Mississippi Coast Urology, PLLC ("MCU"), and the Motion for Summary Judgment [94] filed by Donald S. Davenport and SMS Management, LLC. After reviewing the submissions of the parties and the applicable law, the Court finds that the defendants' Motions should be denied.

### FACTS

In 2008, the plaintiff Dr. Paul Shannon entered into an Agreement of Employment with MCU. The Agreement provided that Dr. Shannon would receive a base salary of $325,000 in addition to incentive compensation based on production. The Agreement stated:

> This Agreement shall be for a period of eighteen months, commencing on the Effective Date, with an option for an additional six months as an employee at the same salary and incentive basis as provided for herein. Thereafter, this [A]greement will continue automatically from year to year, subject however, to the termination provisions hereinafter contained in Paragraph 18 of this Agreement.

(Agreement, Ex. A to MCU Memo. at 1, ECF No. 93-1). Paragraph 18 of the Agreement provided that the Agreement may be terminated by, among other things, delivery of thirty days' written notice by either party, by mutual written agreement, or by MCU's delivery of written notice of immediate termination for good cause. The parties agreed, "This Agreement contains the entire agreement of the parties and may not be changed except by an agreement in writing signed by the party against whom the enforcement of any waiver, change, extension, modification or discharge is sought." (*Id.* at 12).

Dr. Shannon claims that the defendants breached the Agreement by unilaterally reducing his base salary to $180,000, because no written amendment was ever made to the Agreement. The defendants counter that Dr. Shannon assented to this reduction in salary by failing to object to the reduction and by continuing to work at MCU. Nevertheless, Dr. Shannon claims that he could not terminate his employment with MCU, because he was contractually obligated to continue to maintain his medical practice in Jackson County, Mississippi, for an additional twelve months pursuant to a Physician Recruitment Agreement with Singing River Hospital System that was negotiated by the defendants. Dr. Shannon claims that he would have been required to repay Singing River over $260,000 if he had left his position at MCU at the time when his salary was reduced.

On December 1, 2011, Dr. Shannon gave MCU thirty-days written notice that

he was resigning his position.  (Notice, ECF No. 94-8).  He admits that he had signed an employment agreement with a New York clinic well before he provided notice of his resignation.

Dr. Shannon filed this lawsuit against MCU and Mark S. Lyell, the sole member of MCU.  He also sued SMS Management LLC, which is an entity that provided contracted administrative services to MCU, and SMS's employee, Donald S. Davenport.  Dr. Shannon has asserted the following claims against all of the defendants: breach of contract, unjust enrichment, conversion, constructive trust, fraudulent concealment, and fraudulent inducement.  He also seeks a full accounting, because he claims that the defendants have converted and retained funds that are owed to him.

## DISCUSSION

A motion for summary judgment may be filed by any party asserting that there is no genuine issue of material fact that the movant is entitled to prevail as a matter of law on any claim. Fed. R. Civ. P. 56.  The movant bears the initial burden of identifying those portions of the pleadings and discovery on file, together with any affidavits, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  Once the movant carries its burden, the burden shifts to the non-movant to show that summary judgment should not be granted. *Celotex Corp.*, 477 U.S. at 324-25.  The non-movant may not rest upon mere allegations or denials in its pleadings but must set forth specific facts showing the existence of a genuine issue for trial. *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 256-57 (1986).

### I. QUASI-ESTOPPEL:

All of the defendants argue that, pursuant to the doctrine of quasi-estoppel, Dr. Shannon is estopped from asserting a claim for breach of contract by continuing to work for MCU after his salary was reduced. The Mississippi Supreme Court has described the doctrine of quasi-estoppel as follows:

> It is axiomatic that estoppel forbids one from both gaining a benefit under a contract and then avoiding the obligations of that same contract. "A party cannot claim benefits under a transaction or instrument and at the same time repudiate its obligations." *Wood Naval Stores Export Assn. v. Gulf Naval Stores Co.*, 71 So. 2d 425, 430 (Miss. 1954). This doctrine, termed "quasi-estoppel," "precludes a party from asserting, to another's disadvantage, a right inconsistent with a position [it has] previously taken," and "applies when it would be unconscionable to allow a person to maintain a position inconsistent with one to which he acquiesced, or from which he accepted a benefit." *Bott v. J.F. Shea Co., Inc.*, 299 F.3d 508, 512 (5th Cir. 2002).

*Bailey v. Estate of Kemp*, 955 So. 2d 777, 782 (¶21) (Miss. 2007). The Fifth Circuit's decision in *Bott v. J.F. Shea Co., Inc.*, 299 F.3d 508 (5th Cir. 2002), which was cited with approval by the Mississippi Supreme Court in *Bailey*, is instructive in the present case. In *Bott*, a subcontract between a joint venture and a subcontractor required the subcontractor to name both entities participating in the joint venture as additional insureds on its commercial general liability policy. *Id.* at 510. The joint venture did not object to a certificate of insurance that only named one of the entities. *Id.* After an employee of the subcontractor was injured, the uninsured entity sued the subcontractor for breach of contract. *Id.* Since both of the parties

-4-

had negligently disregarded the terms of the contract, the Fifth Circuit held that the doctrine of quasi-estoppel was not applicable; rather the doctrine of waiver should be considered. *Id.* at 513. The court noted that the question of whether the uninsured entity's actions constituted waiver of the terms of the subcontract was a question of fact that should be submitted to a jury. *Id.*

In the present case, it is undisputed that the Agreement provided for automatic renewal absent certain circumstances justifying termination. No party has asserted that circumstances warranting termination existed until Dr. Shannon submitted his 30-day notice of resignation. Only written amendments were permitted by the Agreement, but the defendants claim to have amended the Agreement by either an oral agreement or their conduct. The evidence before the Court indicates that all of the defendants, and potentially Dr. Shannon, either negligently or intentionally disregarded these terms in the Agreement. As in the *Bott* decision, the doctrine of quasi-estoppel does not apply here. The pertinent question presented by this case is whether Dr. Shannon waived the terms of the Agreement, and this is a question of fact that should be presented to a jury.

## II.  LIABILITY OF AGENTS ACTING ON BEHALF OF A DISCLOSED PRINCIPAL

SMS Management and Davenport have filed a separate Motion for Summary Judgment arguing that they cannot be held personally liable to Dr. Shannon, because they were merely agents acting on behalf of a disclosed principal– MCU.

The Mississippi Supreme Court has held, "This state follows the rule that an

authorized agent for a disclosed principal cannot be liable for the acts of the agent's corporate principal." *Turner v. Wilson*, 620 So. 2d 545, 548 (Miss. 1993) (citing *Thames & Co. v. Eicher*, 373 So. 2d 1033 (Miss. 1979)). "To be liable, the agent must commit 'individual wrongdoing.' In other words, the agent incurs no personal liability absent fraud or equivalent misconduct." *Estate of Gibson ex rel. Gibson v. Magnolia Healthcare, Inc.*, 91 So. 3d 616, 624 (¶18) (Miss. 2012) (quoting *Turner*, 373 So. 2d at 548. In *Turner*, the Supreme Court explained:

> The rule that directors, officers, or agents of a corporation are liable for their torts to a person injured thereby, . . . is applicable where they are guilty of conversion. This is true even though they act in behalf of the corporation and although the corporation may also be liable, as where money or property of a third person is in the hands of the corporation and the officers in control knowingly and intentionally convert it by refusing to give up possession, or by applying it to the uses of the corporation . . . .

*Turner*, 620 So. 2d at 548 (quoting *Wilson v. S. Cent. Miss. Farmers, Inc.*, 494 So. 2d 358, 361 (Miss. 1986)) (emphasis omitted).

Dr. Shannon argues that Davenport and SMS are personally liable since they were co-principals with MCU and Lyell who were directly involved in the decisions to reduce Dr. Shannon's salary and in the withholding of funds that were owed to Dr. Shannon.

The Court finds that Davenport and SMS have not met their initial burden of identifying evidence that demonstrates the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). There is insufficient evidence in the record regarding the relationship between SMS, Davenport, and

MCU. In fact, the contract between SMS and MCU has not been provided to the Court. Since the Court cannot determine the amount of control that MCU exercised over SMS from the evidence provided by these defendants, the Court cannot determine whether SMS and Davenport were co-principals or agents of MCU. *See Fonte v. Audubon Ins. Co.*, 8 So. 3d 161, 166 (¶9) (Miss. 2009). It also should be noted that, even if SMS and Davenport were agents, they have not adequately addressed Dr. Shannon's conversion and fraud claims. All of these issues should be presented to the jury at trial.

## CONCLUSION

For the foregoing reasons, the Court finds that the defendants' Motions for Summary Judgment should be denied.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that the Motion for Summary Judgment [92] filed by Mark S. Lyell and Mississippi Coast Urology, PLLC ("MCU"), and the Motion for Summary Judgment [94] filed by Donald S. Davenport and SMS Management, LLC, are **DENIED**.

**SO ORDERED AND ADJUDGED** this the 30th day of December, 2013.

s/ *Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
CHIEF U.S. DISTRICT JUDGE